```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                    HAMMOND DIVISION


CHRISTOPHER HUGHES,            )
                               )
Plaintiff,                     )
                               )
     v.                        )    NO. 2:07-CV-290
                               )
JOHN J. WIDUP and U.S.         )
MARSHAL SERVICE,               )
                               )
Defendants.                    )
```

## OPINION AND ORDER

This matter is before the Court pursuant to 28 U.S.C. § 1915A. The Plaintiff, Christopher Hughes, a federal pretrial detainee confined at the Porter County Jail, filed a Prisoner Complaint 42 U.S.C. § 1983 (D.E. # 1) on August 31, 2007, and an "Amended Complaint" (D.E. # 6) on October 15, 2007. Because the "Amended Complaint" appears to set forth new events which have happened since the date of the complaint, this Court will treat it as a supplemental pleading under Rule 15(d) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court **DISMISSES** the Prisoner Complaint 42 U.S.C. § 1983 and the "Amended Complaint." The Clerk is **ORDERED** to close this case.

BACKGROUND

Hughes, a federal pre-trial detainee at the Porter County Jail ("PCJ"), alleges numerous violations by the PCJ and the U.S.

Marshall Service. As discussed more fully below, he claims (1) that PCJ does not provide sufficient privacy, (2) that as a result of PCJ's unsanitary conditions, he fears that he will contract staph, (3) that he is not safely transported, and (4) that PCJ does not properly respond to grievances.

Regarding the privacy claim, Hughes alleges that "[t]his administration has absolutely no regard for the protection of inmates rights to bodily privacy, and has violated those rights." In support of this claim, Hughes states that the jail videotapes and records inmates in the shower and while using the toilet of his housing pod, in the holdover pod, and in the pod where inmates are held upon arrival. He also states that inmates in these areas in his housing pod are visible to visitors from the visitor phones and to male and female officer from the officer's post.

Regarding the unsanitary conditions claim, Hughes alleges that staph disease is widespread in the jail because of unsanitary conditions. Hughes claims that staph is spread because of the "filthy and nasty" shower stalls that are never inspected and that certain policies of the prison help the spread of staph including, the once a week linen change, failure to provide indigent inmates with underwear, requiring inmates to wear the same uniform 24 hours a day for 7 days before allowing a change, failing to provide hygiene education, failing to provide antibacterial soap in quantity even if the inmate would pay for it, failing to screen for

2

staph infected inmates despite at least 5 staph infected inmates being housed in his housing pod, failing to quarantine staph infected inmates, washing staph infected laundry with the uncontaminated laundry, allowing inmates to drain staph infected boils and leave soiled dressings in the shower area, and failing to properly diagnose and treat staph infection. According to Hughes, PCJ shows a deliberate indifference towards the inmates health and safety by purposely disregarding measures that could protect inmates from staph and purposely subjecting inmates to a potentially deadly surrounding.

Regarding his safe transportation claim, Hughes states that inmates are transported handcuffed and shackled to limit their mobility. In this state, according to Hughes, the inmates cannot properly secure themselves and the transport officers do not fasten inmates' seatbelts.

Regarding his grievance procedure claim, Hughes alleges that the PCJ has a policy and practice of not responding to grievances. He also alleges that inmates submitting multiple grievances in one week are taken from the population and housed in administrative segregation.

DISCUSSION

Pursuant to § 1915A, the Court "shall review . . . a complaint in a civil action in which a prisoner seeks redress from a

3

governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). During this review, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint --(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

This Court reviews complaints under § 1915A using the same standards for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). Under Rule 12(b)(6) dismissal is appropriate if the Plaintiff fails to "show that it is plausible, rather than merely speculative, that he is entitled to relief." *Lang v. TCF Nat. Bank*, No. 07-1415, 2007 WL 2752360, *2 (7th Cir. September 21, 2007) (quoting *EEOC v. Concentra Health Care Servs., Inc.,* No. 06-3436, 2007 WL 2215764, at *2 (7th Cir. Aug. 3, 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (further citations omitted))).

Hughes brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 47-48 (1988). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged

4

deprivation. *Id.* In addition, where the plaintiff seeks damages, to avoid dismissal, the plaintiff must also allege that the conduct he complains of caused him to suffer actual harm. *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997)(holding that allegations of failure to prevent exposure to risk of harm do not entitle a plaintiff to relief because in such a case no harm has ever materialized).

Here, Hughes' allegations regarding bodily privacy fail to state a claim upon which relief can be granted because he does not allege deprivation of a right secured by the Constitution or laws of the United States. *See, e.g., Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995)(upholding district court's dismissal of plaintiff's suit under §1983 alleging male and female guards monitor male prisoners' movements and can see men naked in their cells, the shower, and the toilet). As the Seventh Circuit has stated,

> A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

*Hudson v. Palmer*, 468 U.S. 517, 527 (1983) (citations, quotation

marks, and brackets omitted).

"Monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory." *Johnson*, 69 F.3d at 146. This is true even when female guards monitor naked male prisoners in their cells, the shower, and the toilet. *Id.* Accordingly, Hughes' claim that the PCJ violated his rights by failing to provide privacy is **DISMISSED**.

Similarly, Hughes' allegation that the prison officials do not respond to grievances fails to state a claim upon which relief can be granted. The Constitution does not require that a prison provide a grievance procedure. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988); *Jones v. Brown*, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003). And alleged violations of prison grievance procedures or allegations that prison officials ignore grievances state no claim under § 1983. *Mann*, 855 F.2d at 640; *Wilson v. VanNatta*, 291 F. Supp. 2d 811, 819 (N.D. Ind. 2003). Accordingly, Hughes' claim that PCJ officials violated his rights by ignoring inmate grievances or denying him access to the grievance system is **DISMISSED**.

Hughes also asserts that inmates have been sanctioned for submitting multiple grievances by being placed in administrative segregation, but he fails to allege that he has been sanctioned for submitting multiple grievances. "In every federal case, the party bringing the suit must establish standing to prosecute the action."

6

*Elk Grove Unified School District v Newdow*, 542 U.S. 1, 11 (2004). A general standing limitation is that a litigant will ordinarily not be permitted to assert the rights of absent third parties. *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Flast v. Cohen*, 392 U.S. 83, 99 n.20 (1968). To be sure, retaliation against a prisoner for filing a grievance or complaining about jail conditions may state a claim upon which relief can be granted. *E.g., Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989).  Hughes, however, does not have standing to litigate his claim as presented because he is prohibited from asserting the rights of absent third parties. *See, e.g., Allen*, 468 U.S. at 751. Accordingly, this claim is also **DISMISSED.**

Hughes's safe transportation claim also fails to state a claim upon which relief can be granted. Transporting inmates without fastened seat belts is permissible. *Mojet v. Transport Driver*, No. 1:06cv321, 2006 WL 3392944, *2 (N.D. Ind. November 22, 2006).  In addition, Hughes fails to allege that he was actually harmed by the Defendants' conduct, a prerequisite to recovery. *Welborn,* 110 F.3d at 532 (holding that allegations of failure to prevent exposure to risk of harm do not entitle a plaintiff to relief because in such a case no harm has ever materialized). Accordingly, Hughes' safe transportation claim is **DISMISSED.**

Hughes's remaining claims deal with conditions of confinement at the PCJ, specifically, PCJ's exposure of inmates to staph

7

through its unsanitary conditions. Hughes never alleges that he actually contracted staph because of the unsanitary conditions. Without an allegation actual harm, Hughes may not proceed with his claim for damages. *Welborn*, 110 F.3d at 532 (holding that allegations of failure to prevent exposure to risk of harm do not entitle a plaintiff to relief because in such a case no harm has ever materialized). It may be that some inmates at the jail did suffer actual harm by contracting staph infection, but Hughes lacks standing to assert their rights. *See Newdow*, 542 U.S. at 12; *Montue v. Schwartz*, No. CIV S-06-1276, 2006 WL 3114302, *2 (E.D. Cal. November 1, 2006) (holding that prisoner has no standing to sue defendant for refusing to provide mosquito repellant to prevent infection with West Nile Virus because plaintiff has not contracted West Nile Virus). Accordingly, Hughes' claims regarding the prison conditions at PCJ are **DISMISSED**.

CONCLUSION

For the reasons set forth above, Hughes' complaint and amended complaint are **DISMISSED**. The Clerk is **ORDERED** to close this case.


**DATED: January 3, 2008**                  /s/ RUDY LOZANO, Judge
                                            **United States District Court**